Turley, J.
delivered the opinion of the court.
This is an action of ejectment, which was tried before the lionorable John Read, Judge of the 10th Judicial Circuit, at the December term, 1843, of the Circuit Court of Madison county, and a verdict and judgment rendered for the defendant.
Upon the trial it appeared, that the tract of land in dispute had been granted by the State of Tennessee to the heirs of one Henry H. Story, a soldier of the revolution, who has been long-dead, but at what exact period he died is not fixed by the proof: he died without issue, leaving brothers and sisters, whose rights as heirs depend upon the date of his death; if previous to 1784, his eldest brother was his heir; if after that period, and before 1796, all his brothers jointly, and if after 1796; his brothers and sisters jointly. The proof upon this point is conflicting. Sarah Saunders, the wife of Richard Saunders, the lessor of the plaintiff, is proven to have been the daughter of William Story, one of the brothers of Henry H. Story, and one of his heirs at law, provided he died after 1784, if before, not. Daniel Fuller, the defendant, is proven to have married the daughter of one Edward Story, who claimed to be the son of one James Story, the eldest brother of said Henry H. Story. Whether Henry H. Story had a brother James is doubtful, the testimony upon the point being conflicting, several aged witnesses deposing, that they were well acquainted with the Story family, and never knew or heard of James Story, a brother of Henry H., but knew of three brothers, John, George and William; while on the other hand, several witnesses, among whom, one *517 a sister of Henry H. Story, and family connexions of Edward Story, prove that Henry H. Story had a brother James; that he was the eldest brother, and that Edward Story was his son.
Now, if Henry H. Story died after 1784, then Sarah Saunders, the lessor, is clearly one of his heirs at law, and entitled as such to her share of the premises in dispute, unless barred by the operation of the statute of limitations, which is insisted upon, but need not at present be examined into by this court: if he died previous to 1796, leaving a brother James as contended, then Sarah Saunders is not one of the heirs at law of Henry H. Story, and her lessee has no title whatever to the premises in dispute, and as such can maintain no action against the defendant, whether he be in the possession as husband of one of the heirs of James Story or not.
These different questions were submitted to the jury under the charge of the court, and found against the plaintiff) upon which he moved for a new trial, and based his motion upon the grounds of a misdirection by the Judge, and misapprehensions by the jury.
Upon the points in controversy, the court said to the jury: “That they were to weigh the whole of the evidence, and render their verdict according to the conclusions to which their minds might arrive from the testimony taken collectively: that in weighing the evidence they should endeavor to reconcile it, so as to make it all consistent; but if, they could not reasonably reconcile it, they should give credit to the testimony, which they should be of the opinion, most merited it, they being the judges; that the rule, permitting hearsay evidence to establish pedigree, had been adopted from necessity; that of this kind of testimony, the law regarded that of living witnesses, members of the family entitled to the highest credit, and next to that, the testimony of deceased members of the family.”
There is no error in this charge: it expounds the law correctly. The testimony of living members of a family, and the hearsay of its deceased members, as to who were their ancestors, and the periods of their death, are entitled to more weight than that of persons unconnected with the family, strangers to its blood, and, therefore, having no feeling nor interest in keep *518 ing accurate information upon the subject. The court does not say that such proof is entitled to more weight than the positive information of other witnesses, who speak from their own personal knowledge and observation; to have said so, would have been erroneous, but the instruction is expressly confined by the court, to hearsay testimony, which he informs the jury is received in cases of pedigree from necessity.
There being no misdirection, and the testimony being sufficient to maintain the verdict, we will not enquire whether there be any thing in the allegation that the jury misunderstood the charge and were misled thereby.
Three of the jurors swear, that the principal question, and the one which decided the case, was as to the time when Henry H. Story died, and that they would not have found that he died before 1784, but for the fact, that the court charged, that the testimony of members of the family was entitled to more weight as to births, marriages and deaths, than that of persons not members of the family,
Now, we have seen that the court charged no such thing, except as to cases where such proof rested on reputation or hearsay. We have had occasion repeatedly to say, that affidavits of jurors for the purpose of setting aside a verdict must be received with great caution, and that we willnot carry the matter further than it has been already. We have said that they shall not be received to show, that the jury refused to obey the charge of the court; and we now say, that they shall not be received for the purpose of showing that the charge was misunderstood. But few verdicts would stand if this were the test. It is sufficient if the charge be correct: if the verdict from misapprehension be found either against the law of the case, or the weight of testimony, the evil can be easily remedied by a new trial without affidavit; and if it be against neither the one or the other, there is no remedy required, and no necessity for investigating the secret operations of the minds of the jurors, in arriving at the verdict.
There was no error in refusing a new trial, and we, therefore, affirm the judgment of the Circuit Court.